By the Court. Woodruff, J.
It appears by the evidence herein, without contradiction, that by the by-laws of the defendants, it is provided that their concerns “ shall be managed by a president and a board of twelve directors, of which board, the president shall be a member, and have the casting vote when the board is equally divided. Or by an executive committee of three directors, * * * and the president in like manner shall have the casting vote when the committee is equally divided, and that at stated meetings the president and four directors, and at intermediate meetings the president and two of the executive committee, shall constitute a quorum for the transaction of any business.”
And further, that “ in case of absence or sickness of the president, the board of directors or executive committee, as the case may be, shall have power to appoint a president, pro tempore.”
It further appeared that the president of the plaintiffs, was himself a director, and at the time of the transactions in question, a member of the executive committee of the defendants. And, therefore, in his dealings with the defendants through their executive committee, he must be taken to have had full knowledge of these by-laws, under which the concerns of the defendants were managed.
At a meeting of the board of directors of the defendants,, on the 4th day of April, 1855, nine directors being present,-and among them, Mr. Dunham, the president of the plaintiffs, the defendants’ president being absent, A. M. Sherman, Esq., was appointed chairman of the meeting; and on this occasion Mr. Dunham was appointed a member of the executive committee to fill a vacancy caused by a resignation.
At this meeting the attention of the board being called “ to the proposition to lease offices from the Corn Exchange Bank,” the proposition was “referred to the executive committee with full power, and to report at the next meeting of the board.”
The executive committee consisted of Messrs. Thompson, Bloodgood, and Dunham; and Mr. Mehaffey was the president.
Mr. Dunham, when appointed a member of the executive committee, stated to the board that, as he was acting for the Corn Exchange Bank (the plaintiffs), in the matter of leasing them *438 rooms, he should not meet with the executive committee on that subject.
On the following day Messrs. Bloodgood and Thompson, being at the office of the defendants, concluded on behalf of the defendants (the president not being present), to take the rooms, and accordingly Mr. Bloodgood addressed and sent a note to Mr. Dunham, as president of the plaintiffSj in these "Words:—
“Office of the C. C. & I. Co.
Hew York, April 5, 1855.
Dear Sir.:—This Company will take the rooms over the bank.
By order of the Ex. Com.
E. Bloodgood, of the Ex. Com.”
The president of the defendants, on his return, learning what had taken place, requested Mr. Dunham, the plaintiffs’ president, to release the defendants from their engagement; this was refused. The power of Dunham to bind the plaintiffs appears to have been derived from a resolution of the plaintiffs’ Board of Directors in these terms:
“ On motion resolved, that the renting of the offices in the banking house be referred to the officers with power.” And the testimony showed that the officers of the bank were the president and cashier; and there was evidence that the bank went into that building the previous year and that the president was the officer who had always made the contracts for renting the rooms in the building, and that the cashier collected the rents.
The defendants never entered into the occupation of the ' rooms, and this action is brought to recover rent thereof for three months, viz., from May 1st to August 1st, 1855, after the rate of $2,500 per annum, and there was evidence sufficient to show that the renting, to which the correspondence and resolution referred, was orally spoken of asoa renting for one year, from May 1, 1855, at the rent mentioned, viz., $2,500 per annum.
We are of opinion that no contract of hiring was established which was binding upon the defendants.
It is not necessary to deny that corporations may become bound by the acts of their agents, done in the discharge of their *439 duties, and within the scope of the power of the agents, and that without a formal vote of the Board of Directors: nor to deny that contracts will he implied against corporations, when they have accepted the benefit of what is done by the agent in their name, and have so adopted the act.
Under what various circumstances a formal act of the Board of Directors may be dispensed with it is not necessary to say, but this is clear, there must be an authority to contract, .or there must be an adoption of the contract, otherwise the corporation is not bound.
If an agent have been clothed with powers sufficiently comprehensive, he may bind the corporation. This may be by an express grant of authority, or by the very appointment to an office, the ordinary duties of which involve the exercise of the alleged power.
The present case requires no consideration of these general inquiries. We have before us just the powers conferred by the defendants, and the manner in which they were to be exercised, and we also find the plaintiffs dealing with the defendants with knowledge of both.
No contract was made with the plaintiffs by a general agent. The defendants did not occupy the rooms, and by accepting the benefit of the alleged agreement, become impliedly bound to pay the rent.
The subject of taking the rooms in question was referred to the defendants’ executive committee with power.
That committee, therefore, had under this reference, and perhaps also under their general authority to “ manage the concerns of the company,” power to bind the defendants.
But to constitute a quorum for the transaction of any business, it was necessary that the president and two members of the.committee should be present. If the president was absent the committee must appoint a president pro tempore.
Instead of a formal meeting, two members of the committee confer together and agree to take the rooms, and give notice accordingly. This we think was not enough. It is left in some doubt by the evidence whether the president of the defendants was not in the city, though not at the defendants’ office at the time; at all events, his place does not appear to have been filled, *440 or if the appointment of Mr. Sherman, chairman of the Board of Directors, had any effect beyond the meeting of the Board itself, then he was not present at the meeting of the committee. Probably his duties as chairman ceased with the meeting of the Board.
We think it quite clear that the sending of the letter in question created no contract binding upon either the plaintiffs or the defendants. What took place afterwards consists of efforts on the part of the officers of the defendants to induce the plaintiffs to relinquish any claim, and the manifestation of a determination toy the plaintiffs to insist on the contract. ,
The general rule that a corporation can only act in the mode prescribed by the law of its creation, where the prescribed mode is restrictive and not cumulative in its nature, is applicable by analogy to this case. (Dawes v. the North River Ins. Co., 7 Cow. 462.) Although the restrictions here are contained in the by-laws of the defendants, knowledge of those by-laws is brought home to the plaintiffs through their president.
And not only so; the very basis of the plaintiffs’ claim is an authority to the executive committee given by a resolution of the Board, passed in the presence of the plaintiffs’ president, and the action of' that committee could only bind the defendants when-had in the manner which the laws of its government prescribed.
It is urged, also, that the defendants were not bound because, in this transaction, Mr. Dunham acted alone, when he had no authority from the plaintiffs themselves to let their offices without the concurrence of the cashier. We are of opinion that, under the resolution of the plaintiffs’ Board, read in evidence, if that stood alone, it would have been necessary for the plaintiffs to show that both of the officers of the Bank concurred in the letting. Still, had the undertaking, on the part of the defendants, been made in such form and manner as would bind them, probably the sanction of the plaintiffs’ Board of Directors, implied in the statement contained in one of the letters read in evidence? which states that the Board think they cannot annul the contract, might sufficiently show an approval of the act of their President. And besides, there was evidence tending to show the previous usage of the Bank, which indicated an actual concurrence of the two officers in the letting of the rooms by the President, from *441 time to time, and by reasonable inference, the approval by the Bank of the exercise of that power, in the manner in which it had theretofore been done.
We do not think it necessary to inquire here, to what extent a Banking Company may employ its capital in the erection of offices for the purpose of renting them. We do not suppose that the right to own a building is rigidly confined to the exact number of rooms their immediate purposes require. There may be good reasons for anticipating an increase of business, and providing for its transaction. There may be other reasons why they may have one or more rooms than their immediate business requires them to use. We should be reluctant to say, in such case, that they must suffer those rooms to remain unoccupied, or that the tenant who occupies may refuse to pay rent.
This point-was not raised at the trial, and does not, therefore, properly arise here.
The verdict must be set aside and a new trial ordered—costs to abide the event.