LEWIS POTTER, RESPONDENT, *v.* TOWN OF GREENWICH, APPELLANT.

*Town bonds — a bond running a shorter time than that specified in the statute is void on its face — the court has no power to reform the bond — action against a town — what facts do not give a right of action.*

In 1871, the railroad commissioners of the town of Greenwich, appointed and acting under chapter 907 of 1869, signed and issued bonds of the town to the amount of $40,000, which were by their terms due and payable twenty years, instead of thirty years after their date as required by the statute. The bonds were delivered to one Andrews, the treasurer of the railroad, as an agent to sell them and purchase railroad bonds with the proceeds . Andrews delivered in exchange for such bonds, bonds of the railroad company for $50,000. The town bonds were sold by Andrews, and one of them was purchased by the plaintiff. Interest on the town bonds was paid by the railroad company until 1877, and thereafter until January, 1879, by the town, which, since the last-mentioned date, has refused to pay the interest; but no interest was paid by the railroad company on the $50,000 of bonds given by it to the town.

In this action brought by the plaintiff upon the bond purchased by him:

*Held,* that the bond was void upon its face, and that no recovery could be had thereon against the town.

That the court had no power to reform the bond by so altering it as to make it payable thirty instead of twenty years from its date. (LEARNED, P. J., dissenting.)

The complaint, as a second and separate cause of action, alleged that the defendant purchased from the railroad company $50,000 of its bonds, and in payment thereof delivered to the company its own bonds for $40,000, the company and the defendant each believing the bonds so delivered to be good and valid ; that the plaintiff thereafter purchased from the company one of the defendant's bonds; that interest was paid until January 1, 1879; that thereafter the plaintiff presented the coupons then due to the supervisor of the defendant, who refused to pay the same, alleging that the said bond was illegal and void ; that the plaintiff thereupon tendered to the supervisor the said bond, and demanded the return of the money he had paid thereon, but that the supervisor refused to repay the same or any part thereof.

*Held,* that the facts stated did not constitute a cause of action. (LEARNED, P. J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury, and from a judgment entered upon an order overruling a demurrer to the second and third causes of action set forth in the complaint.

The action was brought upon certain bonds issued by the defend-

ant to aid in the construction of a railroad. In the first cause of action set forth in the complaint the facts attending the issue of the bonds and the plaintiff's acquisition thereof were fully stated. The second and third causes of action were as follows:

"For a further and separate cause of action the plaintiff alleges upon his information and belief that heretofore, and on or about the first day of June, 1871, the defendant purchased and received from the Greenwich and Johnsonville Railroad Company aforesaid, $50,000 (nominal value) of the said company's second mortgage bonds, agreeing to pay therefor the sum of $40,000, and as evidence of said indebtedness caused to be executed and delivered to the said railroad company eighty of its bonds of $500 each, in form alike, except numbered from one to eighty consecutively; a copy of said bonds are hereinbefore set forth; that said defendant and said railroad company each understood, believed and intended that said bonds so delivered were good and valid obligations of said defendant; that thereafter and about the        day of        , 1871, the plaintiff, at the request of defendant, purchased from said railroad company a bond numbered eight, a copy of which is hereto annexed, marked 'A,' and paid the company therefor the full face value thereof in cash, who then became, and ever since has been, the lawful owner and holder thereof, and of the claim which the same represents against defendant, and said railroad company duly expended the said money in the construction and equipment of their said road.

"That thereafter, and until the 1st day of January, 1879, the said defendant paid the interest that became due thereon, and took up the interest coupons as the same fell due; that since the last mentioned date the defendant has neglected and refused to pay the interest that became due, or any part thereof; that on or about the 25th day of March, 1880, plaintiff duly presented the said coupons, then due for interest as aforesaid, to the supervisor of said defendant, and demanded payment thereof; payment was refused, and he, alleging that said bond was illegal and void, refused to pay the same, thereupon plaintiff tendered to said supervisor the said bond and demanded to be repaid the money advanced by him for said bond, and said supervisor refused to repay the same or any part thereof.

" That said coupons now due were, after the same became due, and before the commencement of this action, duly presented at the place where the same were made payable, and payment demanded and refused.

" That the said bond or interest has not been paid or any part thereof.

" For a further and separate cause of action the plaintiff alleges that on or about the 1st day of June, 1871, the plaintiff, at the request of the defendant, and for its legitimate and lawful use and benefit, advanced, laid out and expended the sum of $500, which sum the said defendant promised to repay, with interest; that the same became due and payable on or about the 1st day of January, 1879; that no part thereof has been paid, except the interest thereon up to the 1st day of January, 1879.

" That there is now due and payable to plaintiff, by reason of the foregoing, the sum of $500, with interest thereon from January 1, 1879.

" Wherefore the plaintiff prays a decree and judgment of this court, that said bonds or instruments may be corrected and made to conform to the statute under which the same were issued, in accordance with and as the said parties thereto intended the same should be and were when issued and sold, and the same as corrected be declared a charge upon the real and personal estate within the limits of defendant, and to pay the interest due thereon from January 1, 1879, and in case said bonds cannot be so corrected, then the said defendant be decreed to pay the plaintiff the sum of $500, the amount advanced to defendant and for its benefit, with interest thereon from January 1, 1879, with costs of this action."

*Esek Cowan*, for the appellant.

*J. W. Hill*, for the respondent.

RUMSEY, J.:

The case shows that in March, 1871, an adjudication was made, under the authority of chapter 907, Laws of 1869, by the county judge of Washington county, in which it was recited that a petition had been presented to him under the act, setting forth certain

facts required by it and asking that the bonds of the town may be created and issued in the manner specified in it to the amount of $40,000, and invested in the second mortgage bonds of the Greenwich and Johnsonville Railroad Company, at eighty cents on the dollar, and adjudging that the allegations in the petition are proved, and that the petitioners represent a majority of the taxpayers, and of the taxable property on the last assessment roll, and directing that the order be entered and recorded in the Washington county clerk's office. No petition, or notice, or proof of publication was offered in evidence or proved unless by the recitals in the order, nor was there any evidence of the appointment or commissioning of commissioners, except the parol testimony of the county judge, and no proof of the loss of any of the papers not produced, or that they ever existed, except as they were recited in the adjudication.

It appears further that certain persons claiming to be commissioners under this record, signed the bonds of the town for $40,000, making them due and payable by their terms in twenty years, instead of thirty years, as required by the statute. The learned justice at Special Term finds that the commissioners intended to issue the bonds to conform to the statute, but committed the drafting of them to a scrivener, who by mistake made them read that they are payable in twenty years instead of thirty, and that the commissioners being inexperienced in such matters assumed the bonds to be correct, and *inadvertently issued them* and sold them. He also found that they intended to do right, and intended to do what they did do supposing it was right.

The evidence on this subject shows that the bonds were prepared for signature without any direction or supervision of the commissioners; that the only commissioner who was sworn on the subject, had never examined the law, nor taken any advice on it, and paid no attention to it; that he read the bonds before he signed them, and intended to execute them in the precise form in which they were executed. It was further found that the commissioners, after they had signed the bonds, left them with one Andrews, who was treasurer of the railroad company, who sold them, and with the proceeds purchased railroad bonds. The plaintiff testified that he paid cash for his bond; but there was no evidence except the

hearsay declarations of Andrews, given under objection, to show how the other bonds were sold, or that they were in fact sold, and not exchanged. No officer or taxpayer of the town, except the commissioners and Andrews, ever saw the bonds, or knew of the defect in them until after the last payment of interest by the town, which was in July, 1878.

The bonds amounting to $40,000 bore interest at seven per cent. The railroad bonds amounting to $50,000 also bore interest at seven per cent. Up to 1877, the interest on the town bonds was paid by the railroad company, which paid seven per cent interest on the town bonds of $40,000 directly to the holders of them; but did not pay to the town any of the interest on its $50,000 bonds held by the town. No interest was ever paid on the difference of $10,000.

The plaintiff had no communication with any of the commissioners when he bought his bond, but dealt with Mr. Andrews exclusively. The bonds were by their terms due and payable July 1, 1891, and interest coupons were attached for each year to 1891, payable alternately on the first days of January and July in each year. Upon the trial of the issue of fact raised on the first cause of action set out in the complaint, the court held that the town never ratified the bonds; that the commissioners had no power to make the bonds payable in less than twenty years, but that the statute providing that the bonds shall be due and payable in thirty years overrides and controls the words of the bonds fixing an earlier date for their payment, and that so much of the bonds as prescribes an earlier date of payment than that fixed by statute should be corrected and conformed to the statute, and ordered judgment for that relief and for the interest unpaid.

Judgment was accordingly entered correcting plaintiff's bond by erasing the words "to pay on the first day of July, 1891" and inserting instead the words "to pay at the expiration of thirty years from the date hereof," and otherwise as directed in the decision, and defendant appeals.

It must be taken as established in this State that everyone who deals in bonds of a town must see to it that the statute which authorizes their issue has been complied with at his peril; that the commissioners to issue the bonds not being appointed by the town are not town officers, and represent the town no farther than they

act within the statute, and that there can be no such thing as a *bona fide* holder of these bonds. (*Cagwin* v. *Hancock*, 84 N. Y., 532; *Horton* v. *Town of Thompson*, 71 id., 513; *Angel* v. *Town of Hume*, 17 Hun, 374.) If the courts of the United States have adjudged the law differently, their rulings are not yet controlling against the decisions of the highest court of our own State, and we ought not, as we do not desire, to follow them. Justice to all parties in these matters can best be secured by a strict adherence to what the law has required to be done.

The acts of the commissioners are binding on the town only so far as they follow the authority given to them. (*Horton* v. *Town of Thompson, supra.*) The statute here required that the bonds should become due and payable in thirty years with semi-annual interest. Unless they were so payable they are void. The commissioners cannot impose upon the town any other bonds than such as the law authorized. They are the agents of the town only to do the acts prescribed by the statute, and in the way prescribed by it. The taxpayers never consented to the issue of twenty-year bonds. The petition, as recited in the judgment, asked that the bonds might be issued as specified in the law. That required a thirty-year bond. No taxpayer consented to anything else, and as the consent of the taxpayer is the basis of the right (*Horton* v. *Thompson, supra; People ex rel. D. W. and P. R. R. Co.* v. *Batchellor*, 53 N. Y., 128) no other bond is valid or binding on the town. The case of *Rock Creek* v. *Strong* (96 U. S., 271–277) was decided upon the ground that the bonds there in question were practically thirty-year bonds and within the statute. The learned justice at Special Term held that these bonds, if regarded as payable in twenty years, were not within the power of the commissioners. It was therefore necessary to correct them before they could be made a charge on the town. This having been done, it is sought to sustain it on two grounds: First. That they were made payable in twenty years by mistake. The facts in regard to the mistake I have stated in a former part of this opinion. The commissioners were not mistaken as to the law, for they paid not the slightest attention to it. They were not mistaken as to the facts, for it appears and is undisputed that they made the bonds just as they meant to do, and signed them after reading them over with-

out any misapprehension as to what they contained. They made no mistake whatever; they simply issued the bonds in this manner without taking the trouble to inquire whether they were valid or not. Such a mistake cannot be corrected in equity. (*Lanning* v. *Carpenter*, 48 N. Y., 408; *Mowatt* v. *Wright*, 1 Wend., 355; *Hunt* v. *Rousmaniere*, 1 Pet., 13.)

The second ground on which these bonds were reformed, and the ground mainly relied on to sustain this judgment, is that by the force of the statute the bonds are payable in thirty years, and therefore the statute overrides the contract of the parties in whatever form it is put and makes these bonds payable in thirty years by its own force. In discussing this point it is necessary to keep the idea of a mistake out of our minds, for there was no mistake, and to remember that the bonds are just what the contract of the parties intended them to be, twenty-year bonds. It is also to be remembered that the town has never ratified the act of these commissioners.

Conceding that the transaction was between the plaintiff and Andrews acting as the agent of the commissioners, it was not a loan of money upon the security of a bond to be issued as provided by the statute. The bonds were made and signed and the plaintiff bought this twenty-year bond knowing just what it was. The statute was not in the mind of either. No previous agreement had been had. The bond was there, made as they intended, and the plaintiff bought it precisely as it was. The contract was in the bond, and there was no mistake about it as long as the interest was paid. The contract they made was, not to be sure, the one they were empowered to make. The town authorized them to issue thirty-year bonds. The commissioners did not do it. They issued twenty-year bonds which were worth less than the bonds they were authorized to issue. They sold them and used the money. In doing this they were not acting as public officers. The town was acting as an individual when this contract was made for it. (*People ex rel. D. W. and P. R. R. Co.* v. *Batchellor*, 53 N. Y., 128–141, and cases cited.) The commissioners acted for the town as all other special agents do for their principals. If they go beyond the authority granted the act is not binding on the principal, in the absence of an estoppel. (*Munn* v. *Commission Co.*, 15 Johns., 44;

*Corn Exch. Bank* v. *Cumberland Coal Co.*, 1 Bosw., 436 ; *Horton* v. *Town of Thompson, supra,* 521, 522, 524 ; *Cagwin* v. *Hancock,* 84 N. Y., 542 ; *Martin* v. *Farnsworth,* 49 id., 555–558.)

As we have seen, these bonds in their physical shape are void and of no force. But it is said that the statute is part of the bond and fixes its terms. If that be so no bond can be invalid for want of form, if it purports on its face to be a bond issued under the act and contains an amount to be paid, signatures and seal, for the statute provides everything else. Nor was there any need of this suit, for the bonds are not due, and their time of payment being fixed by the statute there is no uncertainty about the rights of the parties to them.

But the law and the contract are by no means the same thing. The law is the grant of power to the town and that which gives force to the contract when it is made, and at the same time it is the limit of the authority of the special agents to bind the town. (*Horton* v. *Town of Thompson, supra,* 522, 524.) The contract, on the contrary, is the result of the assent of the minds of the commissioners with the purchasers of the bonds. It is contained in and evidenced by the paper which they have made.

The essence of the contract is the agreement of the minds of the parties. This the legislature cannot create. (*People* v. *Batchellor, supra.*) It may fix the manner in which the act shall be done, but it could not say that the act done in an entirely different manner shall operate in a way the parties have not expressed.

If the parties have made the statutory contract, it is good because the law permits it and the contract has been made. If they have made a different contract, with their eyes open, the law simply says, " that is not the thing I authorized." It does not say, " you have chosen to agree on some other thing, and I will, against your protest, make your minds meet in a bargain you never made."

It is an old rule that every statute which limits a thing to be done in a particular form, although it be in the affirmative, includes in itself a negative, viz. : that it shall not be done otherwise. (Plowd. Comm., 206.)

If the statute is a part of the act, this rule is of no use, for the act cannot be done in any other way. Indeed, if the rule contended for by the respondent be the true one, no act done under statutory authority, with good intentions, can ever be void, for the statute

being portion of the act, overrides the void part and makes all good. That makes the validity of such an act depend on the intention with which it was done. But in the absence of fraud or mistake the intention of the contract must be sought in the paper. (Pollock on Cont., 438.) Any other rule would give rise to most distressing uncertainty. Suppose we adopt the rule of the Special Term. The plantiff paid no attention to the law, but thought the bonds were good. As to him they are good because he meant right. Another purchaser knew what the law was; knew the bonds were wrong, but deliberately violated the law, and took his chances. Is the bond to be held good as to him? If it is, what becomes of the maxim that he who comes into equity must come with clean hands?

These commissioners acted in disregard of the requirements of the law, because they did not know what it was. Suppose that after they had issued half of the bonds they had accidentally learned what the law was, but deliberately resolved to violate it? Would any part of the bonds last issued be valid? Would the validity depend upon the proof or failure to prove the guilty knowledge? In these very bonds, suppose that in a suit by another plaintiff another commissioner should swear that he knew what the law was, but for his own reasons proposed to violate it — and Mowry was not sworn Would those bonds be held good or bad?

When does the statute of limitations run against this bond? If the plaintiff should sell it, without changing its form, and should guaranty its payment, when will his liability begin? Suppose these bonds, by their terms, bore interest at four per cent, payable annually. Could any one insist that the town must pay seven per cent semi-annually? Certainly not. And yet that is the rate the statute prescribes. Many other difficulties might be suggested as the result of leaving the terms of the paper and settling its validity by the varying evidence of the intention of the parties. I think the only safe rule must be to hold the party in this, as in all other cases, to his rights as fixed by the contract he has made, and to hold that where the agents of a corporation fail to pursue the strict requirements of a statutory enactment under which they are acting, the corporation is not bound, and the contract is not effective. (*Smith* v. *Newburgh,* 77 N. Y., 130, 136; *Delafield* v. *State of Illinois,* 26 Wend., 192, 221.) It cannot be claimed that the town

is estopped to urge that these bonds are void. (*Town of Springport v. Teutonia Savings Bank*, 84 N. Y., 403, 406; *Weismer* v. *Village of Douglas*, 64 id., 91, 105.) Neither has it ratified them. (*Smith* v. *Newburgh, supra; Horton* v. *Town of Thompson, supra.*)

The legislature has from time to time passed curative statutes by which technical defects in the exercise of statutory powers have been remedied. In 1877, it provided by chapter 320, for the cure of certain defects of the nature of that urged here, and enacted that where the time fixed for the maturity of such bonds was for a longer period than that fixed by the law, a variance of sixty days should not be regarded as affecting the validity of them. If the statute is part of the bond, and overrides all provisions which contradict it, these statutes are of no force, and all the decisions as to the power of the legislature to pass them, are useless learning, because there can be no such thing as a statutory bond which contains provisions contradictory to the statute.

I do not see any principle on which the judgment on the issue of fact can be sustained. No precedent is cited for it and it cannot stand. I do not mean to say that under a complaint containing proper allegations the money paid for this bond may not be recovered if it was bought of the town. That question is not here.

The demurrer to the second cause of action is, I think, well taken. Towns as such have no power to contract, other than the statutes give them. (*Lorillard* v. *Town of Monroe*, 11 N. Y., 392; *People ex rel. Van Keuren* v. *Town Auditors*, 74 N. Y., 310–316.) If the right is given by a private statute it must be stated in the pleading. (Code Civ. Pro., § 530.) None such is stated.

If it is given by a public statute we must take notice of it. We know that there is no public statute which of its own force, without some action on the part of the town, authorizes it to buy railroad bonds and issue its own to pay for them. No facts are stated which show that the town had such authority. It is not even alleged that such authority existed. If proceedings were had or authority given to enable the town to issue its bonds, they must be set out in the count in question. No other count can be referred to for them. (Bliss, Code Pleadings, § 121.) The case of *Horn* v. *Town of New Lots* (83 N. Y., 100) does not aid the plaintiff.

It was alleged in that case that by mandate and authority of acts of the legislature which were cited, the bonds of the defendant town had been issued, and that the money of plaintiff, raised by a void tax, had been applied in payment of them. The court overruled the demurrer to the complaint there, because it appeared that the money · went to pay bonds legally issued by the town, and was therefore paid to its use.

But in the case at bar there are no facts alleged which show the power of the town to make this contract. The demurrer does not admit the power. That is a legal conclusion from the facts. The demurrer admits the facts and takes issue on the legal conclusion. (Bliss, Code Pleadings, §§ 136, 137.) The case of *Town of Wayne* v. *Sherwood* (14 Hun, 423; S. C., 76 N. Y., 599) is in point. In that case the plaintiff alleged that the defendant's intestate made a certain contract with it. The defendant demurred. The demurrer was sustained on the ground that, although the act was done as alleged, the town had no power to make the contract and no cause of action was stated.

But if the bond is part of the second count, as is claimed, the plaintiff is no better off. If the statement in the bond must be taken as true, it is that the bond is lawfully issued and that it is valid. If the demurrer admits anything in the bond it admits that. If the bond is valid it is not due, and there can be no cause of action on it until it is due. There is no allegation that the bond is void. The complaint alleges that the supervisor refused to pay, saying that the bond was void, but that does not amount to an allegation that the bond was in fact void, or that the defendant claimed it was void, for the law does not give the supervisor the right to speak to that effect for the town. He has no more right than any other tax-payer to repudiate its lawful debts.

The same considerations apply to the third cause of action. (See *City of Rochester* v. *Town of Rush*, 80 N. Y., 310, 311, 312.)

For these reasons the judgment on the issue of fact must be reversed and a new trial ordered, costs to abide event; and the defendant should have judgment on the demurrers, with costs, with leave to plaintiff to amend on usual terms.

OSBORN, J. :

I have spent much time in the examination of this case on account of the disagreement of my associates. I am inclined to think with my Brother LEARNED, that if the power of the legislature to authorize towns to issue bonds to aid in the construction of railroads was before the court now as an original question, with the knowledge which they now possess of the practical workings of such power, they would hesitate long before giving their sanction to the validity of such legislation. But it is too late now, particularly for an inferior appellate tribunal, to raise any such question, but it is well at all times to keep this fact in mind so that there shall be no extension of mischief already done, by undertaking to extend or stretch the law as already settled to meet a particular case.

The bonds issued by the town of Greenwich could only be so issued by an act of the legislature. This, it is claimed, was obtained. Except for this legislative enactment no one would claim that the bonds that were in fact issued had any validity. All the officers in the town might unite in issuing bonds purporting to create an indebtedness of the town, but these would not be worth the paper they were written or printed on. Innocent purchasers might procure them, but this would create no liability on the part of the town. Even if under any circumstances such authority could be exercised by officers, this would be most clearly true, unless it could be shown that the money was actually received and used by the town, and for which the town received (its taxpayers equally) full benefit by way of paying the ordinary and legitimate expenses of the town, and so have relieved the town from the burden of taxation *pro tanto*. In this case the bonds issued were void on their face. The town, its officers or the commissioners appointed, had no authority to issue any such bonds. The act should be strictly construed. Upon the face of the bonds the act was referred to, and even to an innocent purchaser the maxim "*ignorantia legis neminem excusat*" might well apply.

There is nothing to show any mutual mistake of facts or even ignorance of the law in the issuance of these bonds. On the contrary, the opposite appears.

I do not think the court had the power to reform the bond in suit. Such a contract, creating an indebtedness on the part of the

town, could only be valid as it was in strict conformity with the statute. Suppose the bonds through the grossest negligence had been issued by the supervisor and town clerk instead of the commissioners appointed for that purpose, would the court reform, by allowing the parties to sign, or regarding the parties as signing, whose duty it was to sign? As well have made these bonds payable in a thousand years or on demand, and then ask the court to reform, as to do so in this case. It is quite unlike the reformation of contracts, which parties have the legal right to make, either as they appear or as they are asked to be reformed. Nor has there been, if such a thing were possible, any ratification to preclude the defense set up on the part of the town.

I think the holders of the bonds have mistaken their remedy, if any. As the only power to issue came from a legislative enactment, and the terms of such enactment have not been followed so that the bonds are invalid, I think the remedy would be to apply to the source of power and by some act legalize the bonds already issued or authorize new bonds to be issued with which to pay these illegal bonds, and which innocent purchasers through very careless parties have obtained and for which they have parted with their money.

For the reasons thus stated I concur with Mr. Justice RUMSEY in a reversal and the granting of a new trial. I also agree with him as to the disposition made of the demurrer.

LEARNED, P. J. (dissenting):

As to the demurrer to the third count, we might think the defendant's argument had much weight, if it were not for the decision in *Horn* v. *Town of New Lots* (83 N. Y., 100). That decision (and especially the concluding part of it), goes so far, that we cannot say that a complaint for money paid, laid out and expended at the request of a town, states no cause of action. In that case the action was described by the court as one for money had and received, of the same class of cases, therefore, as the present. Perhaps the plaintiff here might be required to make the complaint more definite. But that is not the question before us.

As to the demurrer to the second count, the language of the same case is applicable. "The legislature has commanded a town in the

State to issue bonds * * * So far, then, the township has been, by legislative power, made an entity, with capacity as a town to incur a debt and make an obligation and become liable to pay." This count avers a purchase by the town of certain railroad bonds, and an issue therefor of its own bonds, payable in blank, and the purchase by the plaintiff of one of such bonds. It might be that, on a trial of the issue of fact, no recovery could be had. But since the legislation referred to in the opinion just cited, we ought not to hold such account demurrable. (*Perkins* v. *Church*, 31 Barb., 84; *Phœnix Bank* v. *Donnell*, 40 N. Y., 410.) The defendant cites the case of *Ferrin* v. *Myrick* (41 N. Y., 315). That presented the question whether a certain contract therein described alleged to have been made by an administrator, bound the estate, and therefore bound his successor, the defendant. The demurrer therefore admitted only that the person who was the former administrator, made the contract. Its legal effect was the question of law presented by the demurrer. Here the demurrer admits that the defendant made certain purchases and gave certain bonds. And, as said above, townships have now capacity to incur a debt and to make an obligation. If there were still (as perhaps there was once) a complete inability in a town ever to make an obligation; or if the town were never, in the language above cited, "*an entity*," the demurrer might have been well taken.

The real merits of this case arise on the trial of the issues of fact in the first count. The learned justice found that three persons were duly appointed commissioners of the defendant under chapter 907 of the Laws of 1869, on the 18th day of March, 1871. That, on the 25th day of March, 1871, these commissioners, intending to comply with the terms of the act, issued certain bonds, described in the complaint, and sold them for cash at par. That the plaintiff purchased the bond set forth in the complaint, and paid the commissioners in cash therefor, without suspicion of defect or irregularity, and that he is still the owner. That the defendant had paid the interest thereon up to January 1, 1879, but not since. The bond (like the others) is dated March 25, 1871; is payable July 1, 1891; and has coupons attached for semi-annual interest. The principal point is that the statute (sec. 4) provides that the bonds shall be due and payable at the expiration of thirty years

from date, while the bonds actually issued ran a little over twenty. The learned justice finds that this occurred by the mistake of a scrivener. And he decided that so much of the language of the bond as prescribed an earlier date than thirty years, should be construed as corrected and conformed to the statute. Judgment was rendered accordingly, and also for the recovery of the interest already accrued.

There seems to be no proof in respect to the person who prepared the bonds. The learned justice, in finding that they were thus drawn by a scrivener by mistake, probably meant that they must have been drawn by some person, and that there was no evidence that the commissioners intended that they should be drawn differently from the requirement of the statute. The facts appear to be that the bonds were prepared by some one; that the commissioners executed them, without any notice or knowledge, that they did not conform to the statute in respect to time; and that the commissioners, or one of them at least, read the bonds, or some of them before execution.

It seems, too, that there is sufficient evidence that the commissioners, through Andrews, sold the bonds thus prepared, and that through him they also invested the avails in the second mortgage bonds of the Greenwich and Johnsonville Railroad Company. Up to 1877 the railroad company seem to have paid the interest on the town bonds, in substitution for paying the interest on their own. Afterwards, in 1877, on the failure of the company, the money needed to pay the interest on the town bonds was raised by tax on the town and was paid.

We have, then, this state of facts in brief: The commissioners are said in the act (sec. 5) to *represent* the municipal corporation; and are said (sec. 4) to issue bonds *of the corporation*. They issued bonds of the defendant, and they received the plaintiff's money therefor. They invested the proceeds, as they lawfully might (sec. 5), in bonds of the railroad. These railroad bonds belonged to the defendant (sec. 5), and were to be in the custody of their treasurer, or other proper officer. (Sec. 6.) For several years the defendant had the benefit of such ownership of the railroad bonds, inasmuch as the railroad company paid the interest thereon indirectly; that is to say, the railroad company, who were

not liable on the town bonds, paid the interest on them in the place of paying the interest on their own bonds, held by the town. So that for several years the town practically received the interest on the railroad bonds. Thus the defendant had the plaintiff's money, and invested it in railroad bonds, and now refuses to pay the obligation which it gave for this money.

It may be that the commissioners were not town officers. But yet they acted for the town, and the statute says that they *represent* the municipal corporation. It is of little consequence whether the persons who are to act for the town are chosen by a majority of electors who are present at a town meeting, or are appointed by the country judge at the request of the majority of the taxpayers. If the law authorizes such persons to act for the town, that is enough. The town is bound by their lawful action. (*Marsh* v. *Little Valley*, 64 N. Y., 112; *Horn* v. *Town of New Lots, ut supra*; *Thompson* v. *Perrine*, 103 U. S., 806, overruling *Horton* v. *Thompson*, 71 N. Y., 513.) The defendant cites the remarks in *Wellsboro* v. *New York and Connecticut Railroad Company* (76 N. Y., 185), that the bonding acts are subversive of the just rights of the minority. That is so; for the reason that lending money to railroads or investing in railroad stock is not the proper business of towns, and therefore it is unjust that the legislature should have authorized the majority to bind the minority for such business. It would be equally unjust if done through the town officers and by the consent of an overwhelming majority. And it is unfortunate that courts ever held such laws to be constitutional, but it is now too late to change. And since such transactions have been held to be valid, towns must be held to have capacity in these respects "to incur a debt and make an obligation and become liable to pay." And it may be remarked in passing that the case last cited did not involve the rights of *bona fide* holders. The decision in *Sheboygan County* v. *Parker* (3 Wall., 93) that similar commissioners were not "county officers" was a decision, under the Constitution of Wisconsin, which requires county officers to be elected by the electors. It did not touch on the extent to which such commissioners could bind the body which they represented. And that such commissioners are agents of the town is repeatedly stated in *Gould* v. *Oneonta* (71 N. Y., 308). The defendant being authorized to borrow money with which to make a certain purchase did

through its commissioners, as it lawfully might, borrow part of that money from the plaintiff and used the same for the purpose for which it was borrowed. Both the plaintiff and the commissioners intended that, as the evidence of such loan and as the obligation for its repayment, a bond of the defendant should be given in the manner prescribed by the act of 1869. Through some mistake the bond ran only for twenty instead of thirty years. The defendant with the plaintiff's money and other money similarly obtained made the purchase contemplated. The question is, should the plaintiff lose his money. Several views may be urged in his behalf: 1st. That the bond in its present form is a valid obligation of the town. 2d. That the bond should be reformed to correspond with that authorized by the statute. 3d. That if not originally valid it has been ratified. 4th. That the plaintiff should recover his money on the original consideration.

*First.* We are unable to say that the bond in its present form is a valid obligation of the town. In the case of *Rock Creek* v. *Strong* (96 U. S., 271), cited to support this view, the bonds according to the act were to be payable not more than thirty years from date. They were dated September tenth and were made payable thirty years from October fifteenth, but they were not registered by the auditor until October seventeenth. The court held that they were, practically, thirty-year bonds. That is very different from this case. In *Singer Manufacturing Company* v. *City of Elizabeth* (42 N. J. Law, 257) the city was authorized to issue bonds payable in not less than twenty years. The obligations issued were payable on demand. The court said: " The plaintiff in good faith loaned to it the requisite sum, and such money in common honesty must be repaid." The decision may stand as giving a recovery on the original consideration. In *Johnson* v. *County of Stark* (24 Ill., 92) the county had issued bonds with coupons payable in New York. Previous decisions had held that county obligations must be paid at the treasurer's office. The court held that the part which mentioned the place of payment might be rejected. If that were sound doctrine, yet it could not be applied to this case. It is not a mere rejection but an entire change which is needed. We do not see how an authority to issue thirty-year bonds can justify the issue of bonds running only twenty years.

*Second.* It is claimed that the bond should be reformed, and this was the opinion of the learned justice. The defendant's counsel urges, and we think correctly, that this is not the ordinary case of mistake in the execution of an instrument, inasmuch as there is no reason to think that the plaintiff and the commissioners did not understand its contents. But there is another view. The commissioners were public officers appointed for a certain purpose. If they neglected or refused to perform their duties they might be compelled to perform. It was their duty to execute bonds running thirty years. The plaintiff, whose money they had received, had a right to compel them to discharge the duty they owed to him. As it was said in the case of *Gould* v. *Oneonta* (*ut supra*), where certain coupons had been taken off, " there was nothing which prevented the commissioners from reannexing the coupons to the bonds and then paying them. Or if they had destroyed them they could execute new ones. * * * *They could then have done what they should in the first instance have done. They could have righted a wrong which they committed.*" It ought not to deprive the plaintiff of his right to such a bond as the commissioners should have given; that he trusted that they would do their duty. He was not to blame, and they were. It is not an answer to this view to say that the commissioners sold him a twenty year bond, and that is the end of the bargain. It was not, accurately speaking, the sale of the bond of some third party. It was the executing of the defendant's obligation for money lent to the defendant. And when the public officers, authorized to execute a proper obligation, did negligently execute one which was improper, the plaintiff should have, in some way, the obligation which the law declared he should have. The learned justice suggests that the constitutional provision stands in the way of the execution of the proper bond. We doubt whether that provision impairs obligations existing at its adoption. At any rate, the form of the judgment in this case obviates any objection on that point. We do not think it necessary to discuss the question of ratification.

But we may say that, if the plaintiff is not to receive the bond to which he was entitled running for thirty years, we see no reason why he should not recover back his money from the defendants. The case of *Horn* v. *Town of New Lots* (*ut supra*), is strongly in

his favor. There by an illegal assessment the plaintiffs money had been taken, and it had been used for the benefit of the town in paying some obligations. It was held that the plaintiff might recover as for money had and received. Here the plaintiff's money has been used for the benefit of defendant in buying railroad bonds. But his money, instead of being taken from him by an illegal assessment, has been filched from him by an illegal bond. And the defendants are the persons who set up its illegality. If the defendants refuse, as it is proved that they did in this case, to execute a bond in accordance with the act, it is simply unjust that they should keep the plaintiff's money. They have had the railroad bonds which they bought with it, and whether the purchase was profitable or not, cannot matter to him. Even if their "treasurer or other proper officer" has not taken proper care of those bonds, that is no reason why they should not pay the money they have had.

The judgment should be affirmed, with costs.

Judgment reversed, new trial granted, costs to abide event.