## THE PEOPLE'S BANK, RESPONDENT, *v.* ST. ANTHONY'S ROMAN CATHOLIC CHURCH, APPELLANT.

*Religious corporation—a negotiable instrument issued by it invalid, unless shown to have been issued by authority of its board of trustees.*

This action was brought upon a written instrument which certified that the defendant, a religious incorporation formed under chapter 45 of 1863, and of ·chapter 60 of 1813, was indebted to Edwin Harlow or order for $500 duly received from him as a loan, bearing interest at seven per cent per annum, payable semi-annually at a bank therein named. It stated that it was redeemable within two years or sooner at the option of the church. It was dated April 1, 1876, and was signed "John Loughlin, President ; Daniel Ross, Secretary; William J. Lane, Treasurer and Pastor of St. Anthony's Church."

*Held,* that as the act under which the defendant was incorporated vested the management of its temporal affairs in a board of five trustees, and as there was no evidence to show that the board of trustees had authorized the issue of the certificate in suit, the defendant was not liable thereunder.

That its liability thereon was not affected by the fact that the three persons signing the certificate were in fact members of the board of Trustees, and constituted a majority thereof.

*It seems* that in a proper case, for the indebtedness of a religious corporation, the trustees acting as a board, properly organized for that purpose, would be authorized to empower its officers to execute and deliver in its behalf instruments of this description.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

·*Roger A. Pryor,* for the appellant.

*John Clinton Gray* and *Edward C. Perkins,* for the respondent.

DANIELS, J. :

The judgment was recovered for the amount unpaid upon eight certificates or promissory notes, each for the sum of $500, and given in the following form :

"No. 11 A — $500.

"ST. ANTHONY'S ROMAN CATHOLIC CHURCH, }
"GREENPOINT, BROOKLYN, E. D., *April* 1, 1876. }

·" This certifies that St. Anthony's Roman Catholic Church of the ·city of Brooklyn, county of Kings and State of New York, is indebted to Edwin Harlow or order five hundred dollars, duly received from the

said Edwin Harlow as a loan, bearing interest at seven per cent per annum, payable semi-annually at the Mechanics and Traders' Bank (Greenpoint), Brooklyn, E. D.

" This certificate is redeemable within two (2) years, or sooner, at the option of the church.

(Signed)    " JOHN LOUGHLIN,

" *President.*

" DANIEL ROSS,

" *Secretary.*

" WILLIAM J. LANE,

" *Treasurer and Pastor of St. Anthony's Church.*"

The defendant was at that time and still is a religious corporation created under chapter 45 of the Laws of 1863, and the act of 1813, chapter 60 (2 R. L., 212), providing for the creation of religious corporations. By section 4 of the latter act the trustees of every church, congregation or society organized under its authority have been vested with the power to take into their possession and custody all the temporalities of the society, consisting either of real or personal estate, and to recover by suit or otherwise the debts, demands, rights and privileges of all churches, meeting-houses, parsonages and burying places, with the appurtenances, and all estates belonging to the society, and to purchase and hold other real and personal estate, and demise, lease and improve the same for the use of the society, and to repair and alter their churches and erect others and dwelling-houses for their ministers, and school houses and other buildings for the use of the society. (2 R. S. [6th ed.], 414, § 12.)

This section, as it was framed and has since been construed and applied, subjects the temporal affairs of a religious corporation to the control and the management of its trustees. By the act of 1863 the temporal affairs of this society were vested in a board of five trustees, of whom the Roman Catholic archbishop, or bishop of the diocese, should be one, the vicar-general of the diocese another and the pastor of the church for the time being a third, and these three were empowered to select and appoint two laymen, who were members of the church, as the other two trustees. It was to this board of five trustees that the management of the property and temporal affairs of the society was given, and neither of the instru-

ments upon which the judgment was recovered was made by this board, neither was it shown that the board of trustees authorized in any form the making or delivery of either of them. The three persons subscribing the instruments were members of the board of trustees of the society, but did not profess to act as the board in executing or delivering the certificates or notes. But one of them subscribed his name as president, the second as secretary and the third as treasurer and pastor of the church. This act of subscribing and delivering the instruments may be construed as carrying with it an assertion that they had been authorized so to do, and acted on behalf of the board of trustees. But that is not evidence that the authority to make or deliver these instruments had by the board been conferred upon them, for an agent cannot prove his authority to act on behalf of a board by his own assertion that such authority has been acquired by him. (Whart. on Agency, etc., § 163; *Marvin* v. *Wilbur*, 52 N. Y., 270, 273.) And the same rule applies to officers acting on behalf of a corporation, where the existence of the office itself does not include the possession and exercise of the authority, as it has been frequently held to do in the case of the cashier or teller of a bank. The fact that one of these persons may have been the president, another the secretary and the other the treasurer of the board of trustees, did not vest them, or either of them, with the power to bind the society or corporation by the execution or delivery of these instruments. In *Packard* v. *Universalist, etc., Society* (10 Metc., 427) this principle was considered in its application to the powers of the treasurer of a religious corporation, and it was held that "there is nothing in the nature of the business to be done, or the duties which devolve upon the treasurer of such corporations, that can require or justify the giving of negotiable instruments binding the society without being authorized by a special vote to that effect." (Id., 430.) And the principle is a general one, where the power exercised does not necessarily vest in the office, that the agent or officer professing to act for a corporation must be shown to have authority so to act before what he does will be binding upon the corporation itself. This subject was considered in *McCollough* v. *Moss* (5 Denio, 567), and it was held by the court of errors that the authority of an agent to act on behalf of a corporation must first be established

before his acts can be legally binding upon that body. And this rule was followed in *Adriance* v. *Roome* (52 Barb., 399) and *Dabney* v. *Stevens* (40 How., 341), where it was said in the opinion, considering the powers of the officers of a manufacturing corporation, that "neither the president, therefore, nor the secretary, nor both combined, possess the power to bind the company by making the drafts in question or negotiating with the plaintiffs for their acceptance, except upon proof that the board of trustees had conferred either a general authority to borrow on the company's credit upon them or either of them, or a particular authority in respect to the drafts in question, or that the conduct of the company was such as to create a well founded belief in the plaintiffs that such general or special power had been delegated, or that the acts of said agents, although unauthorized, were subsequently ratified by the board of trustees." (Id., 347.) And to the like effect is *Corn Exchange Bank* v. *Coal Company* (1 Bosw., 436), and *Marine Bank* v. *Clements* (3 id., 600). There was no evidence upon the trial in this action to bring the case within this general legal principle. It was not shown that the board of trustees had ever in any form considered or acted upon the question whether the notes or certificates should be given. Nor was it proved that any of the money mentioned in them had ever been received by the corporation or that it had in any form ratified or confirmed the act by which the notes or certificates were given. The fact that the three persons subscribing the instruments were a majority of the board of trustees, will not sustain the judgment. For they did not act as a board in executing and delivering the instruments, but they were subscribed by them individually and separately without, so far as appears by the case, any concurrent action whatever. And that they clearly had no authority to do. For the power given to the trustees was vested in them as a board, and to exercise it the law required that they should meet and act together or that the minority should have received notice of the meeting and failed to attend. For the statute has provided when the powers of a corporation are directed by its charter to be exercised by any particular body or number of persons, a majority thereof, where the authority may not otherwise be provided, shall be sufficient to form a board for the transaction of business, and every decision of a majority of the persons duly assembled as a board shall be valid as

a corporate act. (2 R. S. [6th ed.], 391, § 6.) And whenever any power, authority or duty is confided by law to three or more persons, and whenever three or more are authorized or required by law to perform any act, such act may be done and the power, authority or duty exercised and performed by a majority upon the meeting of all the persons or officers so intrusted or empowered, unless special provision is otherwise made, and whenever the duty has been or shall be enjoined by law upon three or more persons or officers, and one of them shall have died or have become mentally incapacitated, or shall refuse or neglect to attend a meeting of such persons upon reasonable personal notice, there the action of a majority of the whole number appointed shall be binding and effective. (3 R. S. [6th ed.], 862, § 29.) These statutes require where legal power and authority has been vested in a corporate board that it shall be exercised by them as a board and not as individuals. For that purpose they must meet together, deliberate and determine the propriety of the act afterwards performed. Upon this subject it has been said that "when a statute covers the whole subject and prescribes the persons who may bind a corporate body, and the manner in which they may bind it, resort cannot be had to other instrumentalities. The designation of certain agents and methods for the doing of an act implies a prohibition of any others. (*Landers* v. *Frank Street, etc., Church*, 97 N. Y., 119, 124; *First Nat. Bank* v. *Ocean Nat. Bank*, 60 id., 278, 287.) And this rule was followed and maintained in *McCullough* v. *Moss* (*supra*), where it was said, in the opinion of Senator LOTT, that the affairs of the corporation then before the court were to be conducted by five directors, a majority of whom formed a board for the transaction of business, and the decision of a majority of those duly assembled as a board was requisite to making a valid corporate act (Id., 575), and it was applied directly to the case of a religious corporation in *Cammeyer* v. *United, etc, Churches* (2 Sandf. Ch., 186), where it was held by the vice-chancellor that "the trustees in this case are by the charter the select class or body which is to exercise the corporate functions. In order to exercise them they must meet as a board so that they may hear each other's views, deliberate and then decide. Their separate action individually without consultation, although a majority in number should agree upon a certain act, would not be the act of

the constituted body of men clothed with the corporate powers." (Id., 229.) The same point was considered by DALY, Ch. J., in *Constant* v. *Rector, etc.* (4 Daly, 305, 307), where the law was stated in the same manner and received the sanction and approval of the court.

No such action was taken by the trustees of the defendant concerning the making and delivery of these notes or certificates, but as the case was left by the evidence their execution and delivery was no more than that of the separate and individual acts of the three persons whose names were subscribed to them, and that failed to create obligations binding upon the defendant.

It has been supposed that what was said by the court in the decision of *Kent* v. *Quick Silver Mining Company* (78 N. Y., 159), and in a large number of other authorities cited in support of the judgment, has sanctioned a different rule. But what was said in the opinion of the court in the case just referred to related to acts of the corporation itself, and not, as in this case, to those which were the acts of individual officers, as distinguished from the action of the board entitled to represent and bind the corporation.

The cases which have been so industriously collected and cited have all been examined without finding any one in conflict with the legal principle applied to the disposition of this controversy. And this principle is further supported by *Cattron* v. *Universalist Society* (46 Iowa, 106). As the facts of the case were proven at the trial no liability was established against the defendant for the payment of these notes or certificates, even though it be assumed, as probably it may be, that in a proper case, for the indebtedness of a religious corporation, the trustees acting as a board properly organized for that purpose would be authorized to empower its officers to execute and deliver in its behalf instruments of this description. (*Episcopal, etc., Society* v. *Episcopal Church, etc.*, 1 Pick., 372; 1 Pars. on Notes, etc., 164, 165.)

The judgment should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.