## BANK OF SALINA *v.* THOMAS G. ALVORD.

Where more than legal interest for the forbearance of money is intentionally taken, whether the party acts in ignorance of the law or not, it is conclusive evidence of a corrupt agreement within the statute, and the contract is void.

Safety fund banks, subject to the provisions of the act of 1829, were not authorized to take more than six per cent interest in advance on paper discounted in the ordinary course of business, which became payable within sixty-three days of the time at which it was discounted.

Where such bank discounted paper payable in thirty-five days, and reserved therefor in advance seven per cent interest, it was held that the transaction was illegal, and that the indorser of such paper was not liable thereon.

BROWN, J. The drafts in question in this action were drawn by the firm of Latham, Toser & Perry. One of them for $2,000, thirty-five days after date, and was dated August 28th, 1857; the other for $4,000, eighteen days after date, and was dated September 4th, 1857. They were indorsed by Thomas G. Alvord, the defendant, for the accommodation of the drawers, and discounted by the plaintiff for the drawers, who received the proceeds, less the discount, into their own hands. The drafts had no other origin or inception but in this contract for the loan of the money. It appears by the evidence and the finding of the judge that the plaintiff is one of the Safety Fund Banks, and subject to the provisions of the act of 1829. Both drafts were discounted at the rate of seven per cent per annum, and interest at and after that rate was taken by the teller of the bank at the time. The proceeds of the last named draft was $3,983.89, and the discount taken was $16.11; and the proceeds of the first named draft was $1,987.73, and the discount taken was $12.27. The net proceeds were paid to the drawers, and the discount retained by the plaintiff at the time of the discount. No question arose upon the signatures of the parties, or the presentation and notice of non-payment and protest. But the only question litigated in the court below was the validity and force of the contract under which the plaintiff claimed to recover. The defendant had judgment in his favor at the

circuit, which was afterwards affirmed at the General Term of the Supreme Court for the fifth district, and the defend-ant thereupon appealed to this court.

To bring a case within the prohibition of the statute the paper must be discounted or received in the ordinary course of business. It must become payable within sixty-three days of the time at which it was discounted, and the rate of interest must be greater than at and after the rate of six per cent per annum, and be taken in advance. The trans-action between Latham, Toser & Perry has all these qualities. One of the drafts was payable thirty-five days after its date, and the other eighteen days after its date, and the interest at the rate of seven per cent was taken by the bank in advance of the time of payment, namely, at the time the paper was discounted. The paper was doubtless drawn and indorsed before any agreement was made as to the rate at which they were to be discounted, but the circumstances cannot free them from the taint of illegality if it otherwise adheres to them, because they had no vitality or force until they were discounted, and the contract for the loan is deemed to have been made at that time and not when the drafts were pre-pared. Here, then, is a contract which the bank was forbidden to make, and which it is seeking the aid of the courts to enforce and carry into effect. The general principle is stated in Com. on Con., 30, that " all contracts and agreements which have for their object anything which is repugnant to justice, or against the general policy of the common law, or contrary to the provisions of any statute, are void; and whenever a contract or agreement is entered into with a view to contravene any of those general principles, there is no form of words, however artfully introduced or omitted, which can prevent courts of law and equity from investigating the truth of the transaction."

It is thought by the counsel for the plaintiff that the charge of seven per cent by the bank originated in a mistake of the teller in estimating the amount of the discount, and therefore, the transaction is not to be treated as a breach of the statute. The proof shows that the cashier of the bank

passed the paper to the teller, Thomas I. Leach, with directions to discount it without further instructions; and that he estimated the amount at the rate of seven per cent, and retained that amount from the proceeds, giving the balance to Perry, who said nothing to him about it. He supposed his figures and estimate were right, and did not know of the provision of the statute at the time. He made no error or mistake in what he did. He accomplished just what he intended, which was to take the discount at the rate of seven per cent. A mere error in figures; an innocent mistake of fact in estimating the amount of interest would not constitute usury, because there must be an intention, a corrupt agreement to take more than the law allows, to make out what we understand by usury. The corrupt agreement spoken of in the books, is an agreement to do what the statute forbids. The court said, in *The Bank of Utica* v. *Wager* (2 Cow., 769), "the receiving usurious interest intentionally is sufficient evidence of the corrupt agreement," and does not need authority to support it. The intention to take the forbidden rate of interest, as well as the taking of it, is established beyond a doubt. The case of *Condit* v. *Baldwin* (21 N. Y.), is referred to as authority to show that where money is intrusted to an agent to loan at the legal rate of interest, and he, in making the loan, exacts a bonus to himself without the knowledge or authority of his principal, does not constitute usury. This decision was not rendered without encountering a very able dissenting opinion, and while it is to be followed and adhered to, must be interpreted by a strict regard to the facts upon which it is founded. The total disregard of the instructions of the principal was an established fact in the case, and the only ground upon which the judgment is to be upheld. No such element is apparent here. The bank could only act through its officers, and in the absence of any express instructions to be found in its by-laws and the proceedings of its managers, whatever the officers do in the business of discounting paper must be regarded as done by the bank itself.

Unhappily for the bank, if there has been any transgres-

sion in discounting the drafts in question, it is itself the erring party. It cannot, therefore, invoke the aid of the doctrine, that the legislature may prohibit the contract and punish the guilty parties, and yet leave the contract to stand in favor of innocent parties not included in the terms of the prohibition. The cases in which the courts will give relief to one of the parties, on the ground that he is not *in pari delicto*, are distinct from those which rest upon a disaffirmance of the contract before it is executed. It is essential to both classes that the contract be merely *malum prohibitum*. If *malum in se* the courts will not interfere to relieve either party from any of its consequences. But when the contract involves neither moral turpitude, nor violates any general principle of public policy, and money or property has been advanced upon it, relief will be granted to the party making the advance: 1st. when he is not *in pari delicto ;* or second, in some cases when he elects to disaffirm the contract while it remains executory." (Opinion of Judge SELDEN *In the matter of the claim of the State of Indiana ; Tracy* v. *Talmage,* 14 N. Y., 162.) The present action is in affirmance of the contract. It proceeds upon the theory that the contract is valid and binding upon the parties to it, and may be enforced in the courts at the suit of the bank who is the erring party, notwithstanding the prohibition of the statute. We are also referred to the case of *The Oneida Bank* v. *The Ontario Bank,* (21 N. Y., 490); but I see so little analogy between the principles involved in that case and those which must govern this, that I decline to pursue the inquiry further.

The judgment of the court below should be affirmed.

WRIGHT, J. The plaintiff, in discounting the bills in suit, one of which matured in eleven days, and the other in twenty-one days from the time of such discount, and taking and receiving interest at and after the rate of seven per cent per annum in advance, not only violated an express statute, but exercised a power that the corporation did not possess. The plaintiffs were a banking corporation subject to the provisions of what

is called the "safety fund act," the 33d section of which declares that "on all notes or bills by it (then) discounted or received in the ordinary course of business, which shall be matured within sixty-three days from the time of such discount, the said moneyed corporation shall not take or receive more than at and after the rate of six per centum per annum in advance." (Laws of 1829, ch. 94; id., 1832, ch. 206.) The transaction was also without their corporate power. They were authorized to discount bills and notes, and other evidences of debts, but this power was limited in the discount of paper maturing within sixty-three days, to discounts upon loans, upon which only six per cent interest in advance should be taken. As to a discount upon such a loan at a higher rate of interest, the corporation possessed no power whatever.

The transaction was a loan of money by the plaintiffs to Latham, Toser & Perry, the drawees of the drafts and taking the drafts as security for the repayment, together with an agreement on the one part to pay, and the other part to receive seven per cent interest upon the loan; and the amount of the interest was reserved by the bank at the time. The bank was expressly prohibited from discounting paper that would mature within sixty-three days, reserving a greater rate of interest than six per cent. The contract was one, therefore, prohibited by statute; it was illegal and in direct violation of law, and, I think was void. It is true that the statute does not in terms declare such a contract void; but as was said by SPENCER, J., in *Thalimer* v. *Brinkerhoff* (20 Johns., 396), "it is a fundamental rule that all contracts which have for their object anything repugnant to the general policy of the law, or contrary to the provisions of any statute, are void." It is claimed that the taking of excessive interest is only prohibited, and that the contract to secure the loan of the drafts by the unlawful act, are not invalidated. I am not able to agree to this. The contract was one and entire, and the illegal element introduced into it vitiated it altogether. The substance of the agreement was to loan to the borrowers a sum of money, provided they would pay

interest at seven per cent, and the principal sum within sixty-three days, and secure their agreement by these drafts; and in pursuance of this agreement the loan was made and the drafts taken. To recover upon the drafts in suit the bank must rely upon this agreement; and by recovering, it reaps the fruits of the illegal contract. As was said by Sir WILLIAM GRANT, master of the rolls, in *Thomson* v. *Thomson* (7 Ves., 473), "the plaintiff cannot stir a step but through that illegal agreement, and it is impossible for the court to enforce it."

I think, also, that the loan under the contract proved was illegal, as well as the security taken. The object of the statute was to protect borrowers against the oppressive exactions of banks, and the policy of the law would be defeated by holding that the plaintiffs could recover the money loaned. If the only hazard in discounting short paper at more than six per cent was the loss of the excessive interest, it is plain that the object of the statute would be frustrated. At any rate the plaintiffs could not recover the money loaned upon the idea of a distinction between the loan and security except upon the theory of a right to disaffirm the contract represented by the drafts; which right I think the law does not give them; and although the sufferer from an illegal transaction may sometimes disaffirm the contract, and recover upon the money counts, upon the principle that the guilty party ought not to be allowed to retain the fruits of an illegal transaction at the expense of the more innocent, this principle cannot be made available to justify a recovery by the guilty party. In this case, however, it is not necessary to hold against the right of the bank to disaffirm the illegal contract and recover from the borrowers the money loaned. No such recovery could be had against the defendant. The action is upon the drafts, and the form of the action *affirms* the contract as made. The defendant, in form and in fact, is a surety. No money was paid to him; and an action for money len cannot be maintained against him.

Again, the discount of the drafts by the banks was an act *ultra vires*, and not within its corporate power. It had no

Opinion of the Court, per WRIGHT, J.

legal capacity to discount paper of the description of these drafts at a higher rate of interest than six per cent in advance. The charter of the plaintiffs limits their power in the discount of paper maturing within sixty-three days to discounts upon loans, upon which only six per cent interest in advance shall be taken. Discounting the drafts in this case, and taking interest at and after the rate of seven per cent per annum in advance, was exercising a power which the corporation did not possess. It requires no argument to prove that a contract which a corporation has no power to make is void and cannot be enforced.

If the taking of the seven per cent was the result of a mistake, or unintentionally done, it would not affect the validity of the transaction. But this is not pretended. The plaintiffs intended to take seven per cent interest on the discount of the drafts; and had this been a usury case, intentionally taking more than legal interest would have been, *per se*, usury. There must be a corrupt agreement, it is true, to violate the statute against usury; but where more than legal interest for the forbearance of money is intentionally taken, whether the party acts in ignorance of the law, or not, it is conclusive evidence of a corrupt agreement within the statute.

I am of the opinion that the proper disposition was made of the case at the circuit, and that the judgment should be affirmed.

Judgment affirmed.