JOHN J. LANDERS, Respondent, *v.* THE FRANK STREET METHODIST EPISCOPAL CHURCH OF THE CITY OF ROCHESTER, Appellant.

The provisions of the act of 1813 providing " for the incorporation of religious societies" (§ 48, chap. 60, Laws of 1813), which prescribe the method of fixing the salary to be paid to a minister of a corporation organized under it, are exclusive, and imply a prohibition of any other method.

Accordingly *held*, where the salary of a minister of a Methodist Episcopal church was fixed by the quarterly conference, instead of as prescribed by said act, that no contract obligation was imposed upon the church; and that an action was not maintainable against it to recover a balance unpaid of the salary so fixed.

*Landers* v. *Frank St. M. E. Church* (15 Hun, 340), overruled.

Under the rules and regulations of the "Methodist Episcopal Church of the United States," enacted by its general conference, no contract rela-

tion exists between a society belonging to that church and its minister. The society is simply a contributor to a general fund raised by voluntary, not enforced contributions, for the support of ministers, and no implication arises of any promise on its part of compensation to the minister assigned to it, from the fact that service is rendered by him and received by the society. The minister renders service not upon an agreed salary but upon an allowance for support to be paid from such general fund.

In the absence, at least, of some valid express agreement, both parties will be deemed to have acted under the obligation of duty imposed by said rules.

The said rules and regulations are not in conflict with said act, or the general law of the State, are binding upon the assenting members, and as to them have the force of contract.

(Argued June 20, 1884; decided October 28, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made at the January term, 1881, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought by plaintiff, a minister of the Methodist Episcopal church, to recover an alleged balance of salary due him.

Plaintiff, pursuant to an appointment by the general conference of said church, had charge of defendant's church edifice and congregation as minister, and discharged the duties of that office for the years 1873 and 1874. Plaintiff testified that at a quarterly conference of the church a committee was appointed to fix the amount of his salary. After consultation with him for the first year the amount was estimated at $2,000, which estimate was accepted by the quarterly conference and by him; that he fixed the sum of $1.800 as the lowest sum he would accept for the second year.

Further facts appear in the opinion.

*Edward Webster & John Van Voorhis* for appellant. The provisions of the Discipline are binding upon every Methodist minister, and form a part of the contract (if it can be called a contract) under which he performs his services as pastor of a Methodist church. This is so as a matter of law. (Green's

Brice's Ultra Vires, 12; *Watson* v. *Jones*, 13 Wall. 679–722; *Risley* v. *I. B. & W. R. R. Co.*, 4 T. & C. 16; Angell & Ames on Corp. [4th ed.], §§ 291, 297, 325; *North River Bank* v. *Aymer*, 3 Hill, 262; *Mechanics' Bank* v. *New Haven R. R. Co.*, 13 N. Y. 599, 631, 634; *McCullough* v. *Moss*, 5 Denio, 567; *Adriance* v. *Roome*, 52 Barb. 399; *Dabney* v. *Stevens*, 40 How. 341, 345, 346; *Van Dine's Case*, 6 Pick. 187.) There is but one way in which any religious society can make a contract in relation to salary, and that is by the votes of a majority of the persons entitled to elect trustees, a meeting to be called for that purpose, and the ratification thereof by the trustees by an instrument under seal. (Act of 1813, §§ 7, 8; *Petty* v. *Tooker*, 21 N. Y. 267–273; *People* v. *Tuthill*, 31 id. 550; *Adriance* v. *Roome*, 52 Barb. 411; *People* v. *Utica Ins. Co.*, 15 Johns. 383; *National Bank of Genesee* v. *Bostwick*, 71 N. Y. 161; *McSpedon* v. *Mayor, etc.*, 20 How. Pr. 395; *Donovan* v. *Mayor, etc.*, 33 N. Y. 291; *Robertson* v. *Bullions*, 11 id. 263; *Brady* v. *Mayor, etc.*, 20 id. 312; *Bonesteel* v. *Same*, 22 id. 168; *Gregory* v. *Same*, 40 id. 273; Willard's Eq. Jur. 735; 2 Kent's Com. 281; *Montgomery* v. *Johnson*, 9 How. Pr. 232; *Manning* v. *Moscow, Presby'ns*, 27 Barb. 52; *Mad. Av. Bap. Ch.* v. *Oliver St. Bap. Ch.*, 30 How. Pr. 455.) There cannot be any implied contract in such a case arising out of the fact of the performance of services. (15 Hun, 340.) As no contract was made, as the law requires, and nothing was done "in opposition to and in disregard of the Discipline of the church," no recovery could be had. (Angell & Ames on Corp., § 291; *Nat. S. & L. Bk., N. Y.*, v. *Mech. Nat. Bk., N. J.*, 89 N. Y. 469; *Lawyer* v. *Cipperly*, 7 Paige, 281; *German Reformed Church* v. *Busche*, 5 Sandf. 666. See 3 R. S. 248, § 8; *Robertson* v. *Bullions*, 1 Kern. 243, 263; *Paddock* v. *Brown*, 6 Hill, 530; *Humbert* v. *St. Stephen's Church*, 1 Edw. Ch. 308; *Youngs* v. *Ramson*, 31 Barb. 49.)

*H. H. Woodward* for respondent. Receiving plaintiff's services, after a request, gives rise to an implied assumpsit.

(15 Hun, 342, 343; *Dunn* v. *Rector, etc., of St. Andrew's,* 14 Johns. 118; *Hooker* v. *Eagle Bank,* 30 N. Y. 83; *Trustees of First Baptist Church* v. *Brooklyn Fire Ins. Co.,* 19 id. 305.) Section 8 of the act of 1813 (3 R. S. [Edmonds' ed.] 639) only limits the power of trustees. (*Ebaugh* v. *German Reformed Church,* 3 E. D. Smith, 60.) Acquiescence and ratification of the contract is fully proven, the services of the plaintiff having been rendered in the presence of the trustees and congregation, and with their full consent, and the benefits having been received without objection. (*Hoyt* v. *Thompson's Ex'r,* 19 N. Y. 207; *Lee* v. *Pittsburg Coal and Mining Co.,* 56 How. Pr. 373; *Bank of Columbia* v. *Patterson's Adm'r,* 7 Cranch [U. S.], 229; 19 Johns. 118; 1 Pick. 372; 12 Wheat. 72; 14 Johns. 118; Ang. & A. on Corp. [8th ed.] 215; *Goodey* v. *The Colchester & Stone Valley R. R. Co.,* 15 Eng. L. & Eq. 596–599; *East N. Y. & J. Railw. Co.* v. *Lightall,* 36 How. Pr. 481; 1 Keyes, 216; 8 Mass. 229; 22 Y. R. 494; *Scott* v. *Middletown R. R. Co.,* 86 N. Y. 200; *Castle* v. *Lewis,* 78 id. 131, 134, 135; *Parish* v. *Wheeler,* 22 id. 494, 508–509; *Bissel* v. *M. S. & N. I. R. R. Co.,* id 258; *DeGraff* v. *Am. Linen Thread Co.,* 21 id. 124; *Flemming* v. *Village of Suspension Bridge,* 92 id. 368; *Vestry of St. Luke's Church* v. *Matthews,* 4 Desaus. [S. C.] Eq. 587–594; *Brady* v. *Mayor, etc.,* 20 N. Y. 319; *Edwards* v. *City of Watertown,* 61 How. Pr. 463.) Unless restrained by law every corporation has the incidental power to make any contract necessary to advance the objects for which it was created. (*Legrand* v. *Man. and Mec. Association,* 80 N. Y. 633.) The term "church" in the Discipline is never applied to the local society. The latter is distinguished as the "circuit" or "station," the "charge" or the "society." (Sherman's History of the Discipline, p. 165, § 219; Baker on Dis. 68, subds. 1, 2; Sherman's Hist. 267, § 500; id. 269, 507.)

DANFORTH, J. The plaintiff relied upon the organization of the defendant as a religious corporation under the laws of this State, and its action as such during the time covered by

the transactions in question; he alleged that he was a minister of the gospel, and in that capacity employed by the defendant as pastor of its church and congregation during the conference years of 1872 and 1873, and 1873 and 1874; that he rendered service upon that employment in consideration of the defendant's promise to pay him $2,000 for the first, and $1,800 for the second year; that of these sums a balance of $811.16 remained due and unpaid, and this he sought to recover.

The defendant denied that such or any contract had been made by it. When the plaintiffs rested, and again at the close of the testimony, the counsel for the defendant moved the trial judge to dismiss the complaint upon the ground among others that there was no evidence of any agreement having been made by the defendant. The motion was denied, and a verdict having been rendered for the plaintiff, and approved by the General Term, the defendant appeals.

The decision turns upon the question presented at the Circuit; and we are of opinion that the application should have been granted.

The organization of the defendant was effected under the act providing " for the incorporation of religious societies." Laws of 1813, chap. 60.) By this statute the trustees are made the representatives of the corporate body, and charged with the exclusive control of all its temporalities. (Id., § 4.) It expressly provides, however, that it shall not be construed to give to any trustee of any church, congregation or society, the power to fix or ascertain any salary to be paid to any minister thereof, and declares that the same shall be ascertained by a majority of persons entitled to elect trustees at a meeting to be called for that purpose, and when fixed, shall be ratified by the trustees by an instrument in writing, under their common seal, " which salary," it adds, " shall thereupon be paid by the said trustees out of the revenue of such church, congregation, or society."

It is obvious from an examination of the record that there was no compliance with any of these provisions, and upon a former trial a nonsuit had been granted for that reason. It

was denied upon this occasion in deference to the decision of the General Term, by which the nonsuit had been set aside (15 Hun, 340), and a ruling made that notwithstanding the statute it was competent for the parties to make the contract in such other manner as they saw fit. We think such a construction destroys the efficacy of the act. It removes the check which was intended to be put upon the authority of trustees (*Petty* v. *Tooker*, 21 N. Y. 267), and takes from the select body of corporators (*People* v. *Tuthill*, 31 N. Y. 550), who were considered by the legislature the proper persons to deal with the matter, and so were authorized to determine the amount of salary to be paid (§ 8, *supra*), the power to do so, by conferring it upon the congregation at large, and leaves the evidence of the obligation to be determined by parol evidence, rather than the written instrument upon which alone the statute authorizes payment to be made. When a statute covers the whole subject, and prescribes the persons who may bind a corporate body and the manner in which they may bind it, resort cannot be had to other instrumentalities. The designation of certain agents and methods for the doing of an act implies a prohibition of any others. (*People, ex rel. Att'y-Gen'l*, v. *Utica Ins. Co.*, 15 Johns. 357; *N. Y. Fireman's Ins. Co.* v. *Ely*, 2 Cow. 678; *Crocker* v. *Whitney*, 71 N. Y. 161; *Donovan* v. *Mayor, etc.*, 33 id. 291.)

The power conferred in this case by the legislature upon the body of qualified voters and the trustees, must be considered an exclusive power, and it is inconsistent with the plaintiff's claim. Nor is any case made for a recovery upon any other ground. The evidence established that the defendant was a part of the "Methodist Episcopal Church of the United States," and that the plaintiff, as a minister, was also a member of that body. It was shown that the laws and regulations of the church, enacted by its general conference and contained in its "books of Discipline," were binding upon its churches and its ministers. Among other things, it was thereby made the duty of the bishop to fix the appointment of the preachers, of the church to accept the preacher thus assigned to it, and of

the preacher to serve as minister and pastor according to his appointment. It was also provided that the amount necessary to furnish a comfortable support to the preacher, should be estimated by a committee appointed by the quarterly conference within whose jurisdiction he was stationed, without regard to the pecuniary ability of the society, or the probability whether a greater sum could be raised for the object, and that certain persons called stewards, should proceed by such method as they judged best, to raise the estimated amount. None of these functionaries are officers of the society, nor are they selected or appointed by it. It was also in the same way provided " that in no case should the church or conference be holden accountable for any deficiency as in case of debt."

It is apparent that the minister who renders service, does so, not upon an agreed salary, but upon an allowance for the support of himself and family, to be raised by voluntary and not enforced contributions, and those coming not wholly and perhaps not at all from the society or church to which he is appointed. Neither the Discipline of the church nor its principles recognize any contract relation between the minister and the society. Its entire policy is opposed to it. It regards its ministers, not as hirelings, but as pilgrims and sojourners, and its societies as voluntary contributors to a general fund. From the fact, therefore, that service is rendered and service received, no implication can arise of any promise of compensation. Both parties must, in the absence, at least, of some valid express agreement, be deemed to have acted under the obligation of duty imposed by the rules to which they had assented. Whether those rules could have been suspended or waived, while the parties remained members of the body declaring them, we think it unnecessary to inquire, for the evidence falls short of proof that any intention was formed to do so by either, much less that they entered into an agreement to dispense with them.

The learned trial judge, however, instructed the jury that the obligation imposed by the rules and discipline of the church was a moral obligation only, and not one recognized as a bind

ing legal obligation by the law of the State. In this we think he erred. The rules and regulations prescribed by the Discipline of the church are binding upon the assenting members, and as to them have the force of contracts. That is the plaintiff's position. He joined the conference, received his appointment as minister over the church and society in the usual way, and thus became subject to the regulations for the support of the preacher, to which we have referred. It was upon the faith of such submission that he enjoyed the advantage or privilege of membership, and he cannot now maintain a claim in defiance of them, unless they are inconsistent with the general law of the State, or the statute under which the defendant was organized. The first is not pretended, and there is nothing in the statute which prevents members of a voluntary religious association from agreeing among themselves as to the conditions of membership and its liabilities as well as its privileges, so long as they do not interfere with the powers and functions of the corporation declared by statute. As the plaintiff failed to prove the promise on which he relied as a cause of action, the appeal should prevail.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.