JOHN J. LANDERS, Appellant, *v.* THE FRANK STREET METHODIST EPISCOPAL CHURCH OF ROCHESTER, Respondent.

*N. Y. Court of Appeals, May* 3, 1889.

Affirming 40 Hun, 633, mem.

1. *Religious societies. Salary of pastor.*—The provisions of section 8 of chap. 60 of the Laws of 1813, prescribing the method of fixing the salary to be paid to a minister of a corporation, organized under the said act, are exclusive, and imply a prohibition of any other method.

2. *Same.*—The salary shall be ascertained by a majority of persons entitled to elect trustees, at a meeting to be called for that purpose, and ratified by the trustees, or a majority of them, by an instrument in writing under their common seal, and paid out of the revenues of the church.

3. When, at a meeting, a subscription paper was prepared and signed by a

number including all, but one, of the trustees with the sum, each was willing to pay towards the pastor's salary, but no resolution or motion .was passed, nor any vote, formal or informal, was called for or taken, there was no compliance with the requirements of said act.

4. *Corporate action.*—The proper way to ascertain the wishes of a majority of a deliberative assembly is by a vote of some kind. Where the exercise of corporate acts is vested in a select body, an act done by the persons composing that body, in a meeting of all the corporators is not a valid corporate act.

5. *Implied promise.*—The fact that a church, organized under chap. 60 of Laws of 1813, receives the services of a pastor, raises no implication of any, promise to pay, where he officiated upon the appointment of the bishop, and his salary was fixed by the quarterly conference, and was to be raised by the stewards.

6. *Stare decisis.*—Where the facts presented upon a second, though different somewhat in details, are substantially the same as on the first, appeal, due effect can be given to the decision of the former appeal only by an affirmance of the judgment.

This action was brought by a minister of the Methodist Episcopal Church, to recover an alleged balance of salary due him as defendant's pastor.

The case is reported, on a former appeal, in 97 N. Y. 119.

Appeal from a judgment of the general term, affirming a judgment entered upon an order nonsuiting the plaintiff on the trial.

*J. S. Lambert,* for appellant.

*Edward Webster,* for respondent.

VANN, J.—The defendant was organized pursuant to chapter 60 of the Laws of 1813, entitled "An Act to provide for the incorporation of religious societies." By section 8 of that statute it is enacted that nothing in said act shall be construed or taken to give to any trustee of any church the power to fix or ascertain any salary to be paid to any minister thereof, "but the same shall be ascertained by a majority of persons entitled to elect trustees, at a meeting to be called for that purpose, and such salaries, when fixed, shall be ratified by the said trustees, or a majority of them,

by an instrument in writing under their common seal, which salary shall thereupon be paid by the said trustees out of the revenues of such church."

Upon a former appeal to this court in this action, it was held that these provisions, prescribing the method of fixing the salary to be paid to a minister of a corporation organized under the said act, are exclusive, and imply a prohibition of any other method. Landers *v.* The Frank St. M. E. Ch., 97 N. Y. 119.

The only question now open to discussion, therefore, is whether the salary of the plaintiff for either year was fixed by a majority of the qualified voters in the congregation, and ratified by a majority of the trustees in the manner required by said section.

There does not appear to have been any attempt to comply with the statute during the first year, although on one Sunday, in June, 1873, the plaintiff gave notice that on the following Sunday the presiding elder would attend for the purpose of receiving subscriptions towards the payment of the deficiency in his salary.

The presiding elder did attend accordingly, and he received subscriptions for the purpose indicated, but no action was taken by the qualified voters or by the trustees. There was simply individual action on the part of certain persons which could not and did not purport to bind the defendant as a corporate body.

Assuming that the meeting of September, 1873, was held pursuant to a regular notice, what was then done by the qualified voters toward fixing the salary of the plaintiff? No organization was effected, no motion made, no vote taken, no record of the meeting kept. It seems to have been a social rather than a business meeting, for refreshments were first served. The plaintiff then made some pleasant remarks, not of a business character, and finally said that the amount to be provided for was $2,000 for the pastor's salary. He then continued, " I wish to know whether you

are satisfied with that, and also whether it shall be paid to me month by month. I can only repeat that it is for you to act in the matter, and do what is best for your own interest. If you do not, we shall part. If there is a single person present who is dissatisfied with this, I wish you to say so fully and frankly." Several speeches were made, approving the plaintiff's proposal, and at last one gentleman said, " It is clear that we are of one mind in this matter, and to save time I propose that a subscription be prepared and circulated among those present, and that every one pledge himself to what he is willing to give monthly toward the pastor's salary."

A subscription paper was then prepared with the following heading: " We, whose names are hereto signed, promise to pay monthly the sums set opposite our names towards payment of the pastor's salary," and various persons, including all of the trustees, but one, signed it and added the sum that they were willing to pay. The trustees signed as individuals only, each binding himself, personally, to pay a certain amount. No other action was taken at the meeting, and no resolution or motion was passed. No vote, formal or informal, was called for or taken and nothing was determined by a majority of voices. The request of the plaintiff that if " a single person " was dissatisfied he should say so " fully and frankly," was simply an invitation to such person to express his views in the form of a speech.

There may have been many who were dissatisfied who did not wish to say so in that way. Those who spoke, perhaps a dozen in number, were in favor of the plaintiff's proposition ; but what was the opinion of the hundred who did not speak ? What assurance is there if a vote had been taken the proposition would not have been defeated ? We do not think that any action was taken by the qualified voters at this meeting. All that was done was by the voluntary action of individuals. The judgment or will of a ma-

jority of the qualified voters, as an aggregate body, was not ascertained. No question was put to them.

The proper way to ascertain the wishes of a majority of a deliberative assembly is by a vote of some kind. It cannot be assumed from what was said by the plaintiff and others, that those who said nothing assented to his proposal. Silence in such a body, under such circumstances, does not give consent.

The action of those who were trustees was not official but personal in its character. Where the exercise of corporate acts is vested in a select body, an act done by the persons composing that body, in a meeting of all the corporators, is not a valid corporate act. Cammeyer *v.* United German Lutheran Churches, 2 Sand. Ch. 208; Constant *v.* The Rector, etc., of St. Alban's Church, 4 Daly, 305.

At the meeting held in December, 1873, action was taken upon the resignation of the plaintiff, but nothing was done in relation to his salary.

There was no ratification by the trustees, because there was nothing to ratify, and no attempt was made to ratify any supposed action by the qualified voters. The trustees do not appear to have made any payment to the plaintiff during either year. The ecclesiastical officers seem to have taken entire charge of that subject.

On the first appeal to this court, it was held that, as the plaintiff officiated upon the appointment of the bishop, and his salary was fixed by the quarterly conference, and was to be raised by the stewards, all ecclesiastical authorities, the fact that the defendant received his services raised no implication of any promise to pay.

As the facts presented upon the two appeals, although differing somewhat in details, are substantially the same, due effect can be given to the decision of the former appeal only by an affirmance of the judgment.

All concur, except BRADLEY and HAIGHT, JJ., not sitting.