Caldwell, J.
This case is in this court on appeal from the court of common pleas. It involves a question of very great interest. It seems that one Lauer became a stockholder in the Produce Exchange Banking Company, holding about $2,000 worth of stock. That stock had upon the face of it what it is claimed constituted a lien in favor of the bank issuing it for any indebtedness of the holder to the bank.
Lauer took the stock to the bank with which O. M. Stafford is connected — The Woodland Avenue Savings and Loan "Company — and pledged it for a loan of money. The money was not paid. The stock was sold according to the provisions of law and bought in by the bank, and Mr. Stafford presented it to the Produce Exchange Banking Company to have it transferred upon their books. The Produce Exchange Banking Company refused to transfer the' ■stock, because the one to whom it was issued — -Mr. Lauer — ■ was indebted to the bank at that time.
*52 This bank is incorporated, and is what is known in the-law as a Savings and Loan Association.
The facts are agreed upon in this court; and the question of law is raised, whether under the facts as they are agreed upon, the Produce Exchange Banking Company can be compelled to transfer this stock into the name of Stafford.
The provisions upon the face of the stock certificate areas follows:
‘ ‘ The Produce Exchange Banking Company. 5 ’
“No. 145
“20 Shares.
“Capital Stock, $200,000.00
“2,000 Shares, $100.00 each.
“This certifies that M. Lauer is the owner of 20 shares in the capital stock of the Produce Exchange Banking Company of Cleveland, Ohio, on which 50 per cent., being fifty dollars per share, has been paid, transferable only on the book of the company in person or by attorney, on the surrender of this certificate.
“Not transferable by any stock-holder liable to this company as principal debtor or otherwise, without consent of the board of directors.
“In witness whereof, the president and secretary have hereunto subscribed their names and caused the seal of this company to be affixed at Cleveland, Ohio, this tenth day of February, A. D., 1890.
“R. R. Herrick, Pres.
(ideal) “Chas. O. Evarts, Sec.”
Indorsed on the back:
“The estate of Martin Lauer, deceased,
“By Catilianna Lauer,
“E. T. Lauer, Executors.
“Cornelius A. Lauer,
“Grace E. Collins,
“Witness to Catharine Lauer,
“A. F. Clark.”
It is claimed that, having this language upon the face of it, that stock is not transferable by any stockholder liable *53 to this company as principal debtor or otherwise, without the consent of the board of directors.
It is essential to state, perhaps, that the indebtedness of Lauer to the bank for the stock is not counted upon, although this recites that he has paid fifty cents on the dollar; the remaining fifty cents is not the debt that is counted on here. On or about the 1st day of March, 1890, the certificate referred to above was pledged to the Woodland Avenue Savings and Loan Company by Martin Lauer to secure an indebtedness of $5,000. The fourth finding is that on the 28th day of March, 1891, Martin Lauer became indebted to the said defendant bank in the sum of $2,500, which indebtedness remains unpaid. From that it seems that the entire indebtedness for which the Produce Exchange Bank claims a lien upon this stock, occurred after the time it was issued, and occurred after the time when it was pledged to the Woodland Avenue Savings, and Loan Company by Martin Lauer.
The Produce Exchange Banking Company had no written by-laws upon the subject. There had been no action of the board of directors, nor of the stockholders, determining the exact character of the stock, as to what should be on the face of the stock. There had been no action by any of the officers or any of the stockholders of the company determining that the bank should have a lien upon all of the stock issued, for any indebtedness of the person to whom it was issued by the bank,except this:
The directors authorized C. O. Evarts, an officer in the bank, to procure a book of blank certificates of stock. He procured the stock certificates in the form before set out, and the same form was issued to all subscribers to the stock of the company.
The first question, perhaps, for consideration is, what power has the bank to fix the lien upon the stock which it issues. It is claimed that this power exists under section 3799, which reads as follows:
*54 “The board of directors may prescribe the terms on-which deposits shall be received and paid out,and the mode of transacting, managing, and conducting the affairs and business of the corporation; and the rules and regulations relating to the receipt and payment of deposits, and the interest thereon shall be written or printed in toe pass books of depositors, shall not be altered so as to affect any deposit previously made, and shall be obligatory on such depositors. ”
It is claimed that under this section the bank had the power to engraft upon stock certificates a lien in the manner in which it was done. That the bank might have done this by by-law has been determined in this state in the case of the Bellevue Bank v. Adeline Higbee, 4 Circuit Court Reports, 222, which case was affirmed by the supreme court.. It was determined in that case, that where a banking company, organized under the savings and loan association statute, undertakes by by-law to fasten a lien upon stock, it may do it; that power rests in the corporation. It may not be revealed fully who did it in that case. The presumption is that it was done by the directors, as, under our banking laws, they are the parties who pass the by-laws, as a rule.
That being done in this case, the question remains whether that may be done in the manner in which it was done here. There is no direct lien given upon stock for a bank in this state by statute. The banking laws define the powers of a backing company, and these laws, as they are defined, have been determined by the circuit court and the supreme court to be such as to give the banking company power to engraft the lien by means of a by-law. The power granted, the mode of exercising that power is to be determined in this case, because this case differs from the one that has been decided. This determines it, if at all, by contract, or by by-laws established by consent.
Had the directors of the bank instructed Bvarts to procure stock certificates containing a notice of the bank's liens *55 ■ on the stock, the case would be no stronger than it now is. If the authority of Evarts to procure the form of certificates was not given before he acted, yet the use of the form he procured would be a ratification of his act, which would relate back to the time he was given authority to procure the certificates. Then the form of the certificates becomes the act of the directors. If thereafter this form was used by the ■directors in all the stock issued, and the stockholders have received the same and acquiesced, it would seem clear that no stockholder could deny the lien of the bank; nor can -any one taking the stock with constructive notice of the lien.
A by-law of a corporation may be shown to exist not only. by the formal action of the directors in adopting the same, but as well by the custom of the company. Morgan v. The Bank of North America, 8 S. & R., 72-88; Bank of Holly Springs v. Pinson, 58 Miss., 421; The Union Bank of Maryland v. Ridgely, 1 H. & G., 324-413.
If it was not correct to treat what was done by the ‘bank as a by-law, yet a stockholder's between himself and the bank, must be held to have contracted that the bank ■shall have a lien. Any dealing with the stock with notice -of the lien will be postponed to the lien of the bank.
The objection raised in argument to a contract of this ’kind is two-fold: first, that the corporation can not deal in its own stock; and second, that it creates a secret lien; and that for both of these reasons a contract of this character is against public policy. There are provisions in our banking laws against banks dealing in their own stock- — -being owners of their own stock- — except in certain ways and in a certain manner. But the case already determined in the 4th circuit court, and affirmed by the supreme court, must necessarily settle the fact that the legislature has bestowed upon the bank, power to in some manner at least take its own stock as collateral security,and engraft a lien upon that stock at the time it issues it.
*56 This being true, we can not see any ground for holding: that such contract is against public policy for the reason' that a corporation can not deal in its own stock. We mustc. regard that as a settled question in this state.
It is urged that this is against public policy, because it! is a secret lien. Our law makes bank stock personal property, and it is to be dealt with as personal property, and any lien upon it must accomplish the same objects and the-same purposes that a lien upon personal property must accomplish in this state.
The mode of obtaining a lien upon personal property in> this state — save by chattel mortgage — -is by taking a lien upon the property, and all that remains thereafter is the mode- and manner of giving notice to the pubUc. Laws are provided by which that may be done. The mode and manner of giving notice may, perhaps, be' varied. It is claimed' that in this state it is not determined that the mere passage-of a by-law by a banking company is sufficient to bind third' parties; that if third parties are to be bound, there must besóme notice that is equivalent at least to the notice required’ where a lien is secured upon personal property in this state, and therefore, this is an open question in this state, whether or not, after all, as to third parties, this is not a secret lien, whether it be declared by by-law, or whether notice is* sought to be given of it by printing upon the face of the-certificate.
Many cases have been cited upon the trial of this cause,, bearing upon this question and upon other questions connected with it.
In the first place, a great many authorities have been cited' to us as to whether or not under a statute like ours,or similar to ours, there is an implied authority to create a lien at all. Upon that question, although we regard it settled in this-state, yet it is one upon which authorities must necessarily differ from the very fact that the statutes of different states; differ.
*57 It has been declared by the highest courts in some states that the statute is such that it is not within the power of a banking company to declare a lien in any manner whatever; it not being declared by the statute, nor implied in any powers that are given, the corporation can not create it.
On the other hand, there are states holding that this lien may be created.
The statutes differ, and we should expect, accordingly, different constructions of the statutes. The differences, to begin with, found in the authorities exist very largely on account of these differences in statutes. Another source of difference is this: Some courts are inclined to construe according to one rule, while other courts are inclined to construe according to another rule. At common law there is no lien upon the stock of a banking company, by the bank. It does not exist; and some courts cite that fact, and say that if the statute is in derrogation to common law, there must be a strict construction. We find that in other states they look upon it more as an enabling statute, or a remedial statute, as a remedy to the bank to secure and enable it to collect what is due. In the states that follow that rule, the statute is more liberally construed, and some of them liberal enough so that a lien is permitted under the statute' that would not be in any other state where the rigid rule is adhered to.
As tojffie mode of creating this lien, there are authorities holding that a by-law is not sufficient to bind third parties; that it is not sufficient notice. In Mississippi the statute gives a lien, and requires that the lien should be made known upon the face of the stock of the company. The company declared the lien, but failed to put it on the stock, and it was held that the third party was not bound by it. In principle the same holding was had in Iowa, and in various states. And even in the 63rd California, 359, it was held that a mere by-law was not sufficient notice *58 to third parties dealing with the stock, to give the bank priority over a bona fide purchaser of the stock. But the same state, in the 79th California, 323, held that where a notice of a lien was upon the face of the stock,printed upon the face of the stock, that it was sufficient to bind third parties dealing with the stock. The same is held in several other cases cited. In 77 New York State Reports, 550, Buffalo German Insurance Company v. The Third National Bank of Buffalo, a case in the supreme court at a special term in Erie county, February 4, 1897, the syllabus is as follows:
“Pledges — Sale after death of Pledgor — A purchaser of stock certificates which give a corporation a lien on the stock to secure any indebtedness of the original holder of such certificates, takes the stock subject to the lien, though he has no knowledge thereof; the presumption that he read the certificate being conclusive,”
New York has held that a corporation can not charge a Men by by-law upen its stock; that there is no implied authority of a corporation to engraft such a lien; and yet the •case last cited holds that such a lien may be created by contract between the parties, and that anyone taking the stock •containing the notice of such lien will be bound by the contract agreement for lien between the bank and the stockholder, and will acquire only the rights that the owner of the stock had when the purchaser obtained the same. As to this matter of notice, I read from 77 N. Y. St., 553:
“The second claim advanced by the defendant, to the •effect that the defendant, by the terms of the contract of pledge between Levi and the plaintiff, has, or at any rate ib entitled to have a lien upon the stock superior to that of the plaintiff,” (the bank that issued the certificate was the defendant), “as an original proposition, and independent of the National Banking Law, seems to be sound. It was plainly stated in the body of the certificates that the defendant was entitled to a lien upon them as against the •owner, as security for any indebtedness from the owner *59 to the bank. The defendant is organized under the National Banking Act of 1864, which prohibits the making of such a contract as that between Levi and the defendant, which is evidenced by the recital in the certificates giving the bank the right to a lien upon his stock under the circumstances disclosed by the evidence at the trial of this case. In order to justify such a contract under the statute, it was incumbent upon the defendant to prove that it was necessary to prevent loss upon a debt previously contracted in good faith, and no evidence was given upon that question. The significant and the important provision of the law the effect of which is in dispute here, is the provision prohibiting the defendant from making loans on the security of its own capital stock. The statute itself prescribes no penalty for its violation. It is not claimed that the defendant has ever purchased, oris the holder of the stock in question; so that the statutory provision that it shall neither purchase nor hold its own capital stock, unless it be necessary for it to do so to prevent loss upon the debt previously contracted, has no particular bearing upon the question to be decided here. The claim of the defendant, then,that it has, or is entitled to have, a lien superior to that of the plaintiff, rests upon the fact that it was agreed between Levi and the defendant when the stock was issued, that it should have a lien for any indebtedness from him; and the plaintiff, when it took the stock in pledge, had notice of the agreement,and took it subject to such lien, or right to a lien. If the contract thus embodied in the certificate was valid and binding as between the defendant and Levi, the right of the plaintiff must be measured by, and can not be greater than, those of its assignor. Where a pledgee has actual or constructive notice of any infirmity in the title of the holder of stock,he gets only the rights of the pledgor. It becomes the duty of one who has received knowledge of such fact as should put him on inquiry, to make such inquiry with all due diligence and in good faith; and anything short of this will impose upon the negligent party, the same liability as though he had acted with full knowledge of all that the inquiry would have disclosed. In the case of Crocker v. Whitney, reported in 71 N. Y., 161, which went to the United *60 States Supreme Court, whose decision may be found in 103 U. S., page 99, it was finally held that real estate mortgaged to a national bank to secure future advances, taken in violation of the National Banking Act, was valid security for such advances on the ground that the National Banking Act contains no provision prescribing a penalty for such a violation of the statute; and the violation only laid the bank open to proceedings by the government, to annul its charter, and could not be taken advantage of by private parties, To the same effect is Thompson v. Bank, 146 U. S., 240. That the plaintiff here took the stock in pledge with constructive notice of the claim of the defsndant that the stock was subject to a lien in its favor for any claim it then had against Levi, is plain, notwithstanding the fact that the plaintiff did not discover the provision in the certificate to that effect till long afterward.” (Citing authorities,) “The plaintiff, when it took the certificates, was bound by the provisions in the certificates, whether it read them or not. The presumption that it did read them is conclusive as matter of law, although false in fact.”
I have read so much of this case, because it seems to be in direct line with the 79th California and the 26th Connecticut, to the point that where a lien is printed upon the face of the stock itself, and is part of it, that it binds any third person who takes that stock, regardless of whether he knew it or did not know it as a matter of fact, because he will be considered as knowing it as a matter of law.
Now, although we have a provision in our statute, as I have already said, for the mode of giving notice of a lien upon personal property, yet if any other mode is followed which is conclusive — obvious to the party who buys that personal property, it is difficult to see why the person is not bound by the lien. Take a wagon; if it is printed all over it that some party has a lien upon it,and a person buys it who by seeing the wagon could have read if he desired to do so, the printing upon it, it seems that such notice would be as effectual as though he had notice in the manner prescribed by statute. A party is about buying personal property, and *61 ffie is given notice at the time he is about to buy, that A has a lien upon the property for anything that may be due at any time from him during the duration of that lien; it would certainly be sufficient notice.
Here is a certificate of stock that is notice to any one who undertakes to purchase it or loan money upon it. It bears the evidence upon the face of it. In the case in Iowa the law required that the by-laws should be posted up in the .room, in the office, and in various places. That was not done, and it is held the bank could not hold a lien as against the third party who had acquired an interest in the stock. But if the law had been complied with, by posting the notice, it would then have been regarded sufficient; and yet that would not be as effectual notice as printing it upon the face of the stock itself.
We are inclined to think that under the authorities — and • some of these authorities are from states where it has been held that it is not sufficient notice to merely pass a by-law which is found upon the records of the company; yet these very states, such as California and even Connecticut, have held that it is sufficient notice of a lien when it is printed upon the face of the stock itself. The same is true of New York, if the case above cited is to be regarded the law of 'that state.
New York has held repeatedly that these liens are not -good under the state statute. Formerly it was held that the liens were not good under the statute of the United 'States; but lately it seems that decisions in the United States courts are to the effect that a third party cannot ■ take advantage of that law; that there being no penalty ■ attached to the prohibition against the company, the government can alone enforce the law by way of proceedings ■ against the company directly. This construction of the U. '■S. statute is very applicable, indeed, to section 8802:
“No director or other officer of such corporation shall *62 borrow or use the funds of the corporation, except to pay-the necessary and current expenses, to an amount greater-than one-half of the amount of stock by him owned or held?, nor shall any officer or director be surety, or in any manner an obligor, for any loan made by the corporation.”
Squire, Sanders & Dempsey, for Plaintiff.
Wilcox, Gollister, Hogan & Parmely, for Defendant.
Here is a prohibition the same as the United States statute upon banks. There is no penalty attached to it.
I do not know why the construction placed upon the-United States statute by the United States court in the two-cases referred to, and in the New York case, is not entirely applicable to this construction of the statute in this state;, that it is a provision available, not to a third party dealing-in the stock, but only to the state itself.
We hold the lien of the defendant good, and that the-plaintiff has not the right to have the stock placed in his-name on the books of the bank.
The plaintiff’s petition is dismissed,at his costs.